tions between Fowler and Hults were begun. The plaintiff in Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197, and the accused in Atwood v. State, 135 Tex.Cr.R. 543, 121 S.W.2d 353, were engaged in finding purchasers for existing leases or interests in existing leases.

\* \* \* \* \*

"All the provisions of the Act above quoted and referred to relate to sales and sellers of securities and not to purchasers or buyers. Nowhere in the Act is there any language which might be construed as disclosing an intention to require purchasers of securities to register or to prohibit one from buying securities without registering, \* \* \*."

Section 2(a) of Article 600a, in so far as it pertains to a mineral lease, defines a "security" as a "certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title." In this case Herren was not authorized to sell or buy. His authority was limited to finding the services of a driller acceptable to Hollingsworth, a driller willing to make a contract with Hollingsworth to explore his ranch for oil and gas. The agreement between the parties did not empower Herren to agree to any of the terms of the drilling contract, so as to bind Hollingsworth, because the selection of the contractor and the making of the contract were left to the discretion of Hollingsworth. The agreement between the parties in this suit did not refer to an instrument in existence, but to one that might or might not be executed in the future, and all the terms of which would be decided by Hollingsworth and the contractor, whoever he might be. Herren had nothing to sell or to offer for sale, but was authorized merely to find a contractor who would confer with Hollingsworth; and after necessary negotiations were completed, and at some future date, the contractor and Hollingsworth would execute a contract to drill a well for exploration purposes, in consideration of a lease conveying an interest in the minerals—the terms of which and the number of acres to be included were all to be decided upon by the parties at some future time, provided they could reach an agreement.

In our judgment, the allegations contained in petitioner's petition do not show, as a matter of law, that his cause of action was condemned by the Securities Act. The trial court erred in sustaining the exception to the petition. Therefore the judgment of the Court of Civil Appeals is reversed, and this cause is remanded to the trial court for further proceedings.

## ANDERSON v. NATIONAL AID LIFE ASS'N.

### No. 2435-7965.

Commission of Appeals of Texas, Section A.

Jan. 20, 1943.

Rice M. Tilley and R. V. Nichols, both of Fort Worth, for plaintiff in error.

Chrestman, Brundidge, Fountain, Elliott & Bateman, of Dallas, for defendant in error.

HICKMAN, Commissioner.

The controlling question in this case is whether or not respondent was authorized to cancel policies of insurance issued to petitioner and his wife on account of their failure to pay premiums thereon within the grace period.

In the trial court petitioner Robert Jesse Anderson recovered judgment against respondent National Aid Life Association for $1,514.40 for the alleged wrongful cancellation by the respondent of two policies of insurance, one issued upon the life of petitioner and the other upon the life of his wife. Upon appeal by the association to the Court of Civil Appeals the judgment of the district court was reversed and judgment rendered that the petitioner take nothing.

Prior to June 22, 1931, petitioner and wife were the holders of policies or certificates in Citizens Mutual and Accident Association of Texas. On that date the respondent acquired its assets by purchase from its receiver. It issued its policies to petitioner and wife in lieu of their certificates in the other association on March 2, 1932. Thereafter, on July 11, 1935, the policies involved in this suit were issued, each reciting that it was "to supersede and replace, and is accepted by the insured in lieu of, all certificates heretofore issued by this association to the insured". These policies bore the following date: "dated this 11th day of July, 1935, as of March 2, 1932." Shortly after January 1, 1939, the respondent cancelled the policies on the ground of the failure of petitioner to pay the monthly premiums of $12.80 allegedly due thereon on December 1, 1938. On January 6, 1939, and again on January 9, 1939, petitioner sent a check for $12.80 to respondent for the December and January payments, but these checks were returned by the association uncashed. The policies contained a provision that "in no event shall payment be deemed to have been made to or received by the company unless actual delivery thereof be made to it".

Upon the trial of the case the petitioner testified that he paid the premiums for the month of December, 1938, by means of a check mailed by him to the respondent's home office in an envelope duly addressed and stamped. The testimony of the respondent's witnesses was to the effect that such remittance was never received. Issues with reference thereto were submitted to the jury, which by its answers made the following fact findings: (a) On December 1, 1938, petitioner drew a check on the State National Bank of Houston in the sum of $12.80 payable to the respondent; (b) he had sufficient money on deposit in said bank to cover the payment of said check; (c) he deposited an envelope containing such check in the United States mail; (d) properly addressed to the respondent; (e) bearing sufficient postage to carry same to its destination. But in answer to another special issue the jury found that the check was not received by the respondent. The findings with reference to the mailing of the check gave rise to a presumption that it was received, but that presumption was overcome by the finding that same was not in fact received. Southland Life Insurance Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854.

The judgment of the trial court in favor of the petitioner was not based upon the ground that he paid the premium on December 1st, but was based upon the ground that the grace period of thirty days, Vernon's Ann.Civ.St. Art. 4732, for the payment of the December, 1938, premiums did not expire until one month after December 11, 1938, and prior to such date, towit, on January 6, 1939, respondent received a check from petitioner in the sum of $12.80, for the December premiums on said policies. The sole question for decision, therefore, is this: Was the monthly premium on each policy for December, 1938, due on December 1st or December 11th? The Court of Civil Appeals held that, as a matter of law, the premium was payable on December 1st, that the grace period of thirty days, Art. 4732, within which petitioner had the right to pay same expired at the end of that month, and that the respondent was therefore within its right in cancelling the policies in January, 1939, and declining to accept premiums tendered thereafter. We are well convinced that that is the correct conclusion to be drawn from the record.

In the first place, the by-laws of the association by which petitioner was bound provided that if premiums were payable monthly, they should be deemed to be due on the first day of the calendar month. But further, the undisputed evidence established that the premiums were due and payable on the first day of each calendar month. As stated above, the policies were dated July 11, 1935, "as of March 2, 1932", but those dates had nothing to do with the question of the due dates of the premiums. The policies disclose that when issued they were assessment certificates. On the face thereof were set out the respective amounts of semiannual dues, mortuary assessment, and emergency reserve fund assessment. How and when a change was made so that the premiums became payable monthly was not developed upon the trial. There was no occasion for the respondent to develop that fact, because petitioner's own testimony showed that the premiums were due on the first day of each month and no fact issue was raised with regard thereto. On direct examination petitioner was asked by his own attorney: "When were the premiums due each month on the policies?" To this he answered: "The first of each month." He was further asked: "About what time during the month with relation to the next premium paying date, did you usually receive those notices?" To which he answered: "Well, they generally came there along about the first; sometimes they were a day or two late, and they have come a couple of days before the first". We quote further from his testimony:

"Q. In other words, you mean, for—we will say, the premium due on June 1st, you usually received your notice around the first? A. Yes.

"Q. And sometimes in the latter part of May, we will say? A. Yes, sir.

"Q. Now, then how long did you wait to send in your premiums? A. I always paid my premiums just as soon as I got the notices—the very same day."

In that state of the record the mere fact that the policies were dated on July 11th is of no significance whatever. The grace period expired one month after December 1, 1938, and respondent was within its rights in declining thereafter to accept the tendered premiums.

The judgment of the Court of Civil Appeals, which reversed the trial court's judgment and rendered judgment in favor of respondent is correct and same is therefore affirmed.

Opinion adopted by the Supreme Court Jan. 20 1943.