REPUBLIC INS. CO. et al. v. INVERNESS
ESTATES et al.

No. 15396.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 17, 1952.

Rehearing Denied Nov. 14, 1952.

Shook & Shook, Dallas, for appellant
Republic Ins. Co.

Thompson, Knight, Wright & Simmons,
Pinkney Grissom, and David M. Kendall,
Jr., Dallas, for all other appellants.

George C. Kemble and Thos. H. Law,
Fort Worth, for appellee.

RENFRO, Justice.

On November 9, 1949, the Republic In-
surance Company and six other fire insur-
ance companies issued policies of fire in-

surance to Inverness Estate and S. E. Whiting, covering a described building and household goods, the policies being for a period of three years. The policies were issued through A. C. Prendergast & Co. On December 16, 1950, the insured property was destroyed by fire, with loss admittedly exceeding $45,000, the aggregate amount of the coverage. The companies denied liability and suit was brought by Inverness Estates, a private corporation, and S. E. Whiting. S. E. Whiting died before trial and Mrs. S. E. Whiting, independent executrix, was made a plaintiff.

Judgment was rendered for plaintiffs and all above named companies have appealed.

Each of the policies was a Texas standard form fire insurance policy, and each provided "The insured may cancel this policy by notice to this Company; upon surrender of the policy this Company shall refund the short rate unearned paid premium. This Company may cancel this policy by giving the insured five days written notice; such notice shall state that the pro rata unearned paid premium, if not tendered, will be refunded on demand."

The total premium for the policies amounted to $650, which, less Prendergast Co.'s commission, was remitted to the appellants by Prendergast Co. in payment of the premium for the full three year period.

On November 14, insureds entered into a Premium Finance Contract whereby $260 was to be paid in cash by insureds to Prendergast Co. and the balance to be paid to Prendergast Co. in two annual installments. Said Premium Finance contract provided in part, " * * * the undersigned agrees to pay you or your assigns, at the banking house of Republic National Bank of Dallas, * * * the said balance in the installment payments provided for on the reverse side hereof, and failure of the undersigned to pay any such installment when due (time being of the essence hereof), * * * you or your assigns may declare all unpaid installments, together with accrued and unpaid interest thereon, immediately due and payable" and "The undersigned further agrees that if he/it shall be in default of the payment of the sum due hereunder or any installment thereof for a period of ten (10) days after due date, * * * such default or branch shall be deemed to be an election on the part of the undersigned to cancel the policy/policies and you are hereby authorized to notify the insurance company of such cancellation, to the end that the return premium appropriate in such case shall promptly become fixed and payable as above indicated. In such event, the undersigned will promptly return or cause to be returned to you or to the insurance company the policy or policies and all certificates issued in connection therewith, * * *." The contract was assigned by Prendergast Co. to Republic National Bank of Dallas. The Bank then paid Prendergast Co. the balance due under the contract. Paragraph 7 of the assignment empowers the Bank to act as attorney in fact for Prendergast "for and in our behalf in notifying the Insurance Company of a default and demanding cancellation of the policy * * *."

We set out, in part, the findings by the trial court:

"On or about November 20, 1950, the Bank had a conversation with Prendergast Company concerning unpaid balance owing by the insureds, and on the same date the Bank wrote a letter to Prendergast Co. 'Confirming our telephone conversation today, we are requesting that you cancel the above policies * * *.' Prendergast Co. did not cancel the policies. It was not the intention of the Bank, Prendergast Co. or the Companies that said letter should ipso facto effect a cancellation, but was the intention of all above named that Prendergast Co. make further efforts to collect the sum owed and in event of failure the Prendergast Co. itself effect a cancellation. Prendergast Co. wrote to insureds on November 28, 1950, advising it would be necessary for the balance of $363.54 be paid by December 2, 1950, and if not paid 'we shall be forced to register direct notice of cancellation on all of these policies. * * * it is imperative that this matter be attended to immediately in order to keep this insur-

ance in force, * * *.' Subsequent to the date of the above letter, a representative of Prendergast contacted insured Whiting in an effort to collect the amount due. Whiting submitted a plan to said representative for paying the delinquent installments and said representative told him he would see if the plan would be acceptable to the Bank and Prendergast Co.

"On December 8, 1950, Prendergast Co., as agent for the Insurance Companies, sent notice to insureds that the Companies elected to cancel and terminate their liability five days after receipt of said notice. Said notices were delayed in delivery, so that they were neither received by the insureds nor delivered to their mail box for as many as five days prior to December 16, having been received on December 13, and the fire occurring on December 16. On December 17, 1950, agents of each Company inspected the building and household goods. On December 21, 1950, Prendergast Co. drew a check in favor of the Bank for the sum of $409.46 to liquidate the insurance premium note.

"Prendergast Co. kept the Bank informed of its efforts to collect under the Premium Finance Contract and after November 20 (date of Bank's letter), Prendergast Co. dealt directly with insureds, with the knowledge and consent of the Bank. All the parties involved recognized the fact that all the policies were in force and effect throughout the period involved and that the policies would not be cancelled until such time as Prendergast Co. itself effected a cancellation by delivering notice for a period of five days, as provided in the policies and in the statutes."

The first eleven points of error contend the trial court committed reversible error because of (a) its findings that the policies were not cancelled by appellees; (b) its findings that Bank had not cancelled policies; (c) its holding that the various parties did not intend that the policies be cancelled; and (d) its finding all parties recognized the policies would not be cancelled until Prendergast Co. gave five days notice.

Points 12, 13 and 14 complain of the court's findings that notices of cancellation were not received five days before the fire and point 15 sets out alleged error in admission of evidence regarding other transactions between some of appellants and insureds.

When the language of a policy is susceptible of more than one construction, it should be interpreted strictly against the insurer and liberally in favor of the insured. 24 Tex.Jur., p. 705. We call attention to the language of the policy, which makes no mention of any deferred payment plan and contains only one provision concerning the insurer's right to cancel, namely, "This Company may cancel this policy by giving the insured five days written notice; such notice shall state that the pro rata unearned paid premium, if not tendered, will be refunded on demand."

The Premium Finance Contract was between Prendergast Co. and the appellees. In the first paragraph of the Finance Contract it is provided that upon failure of the insured to pay any installment when due, Prendergast "may declare all unpaid installments, * * * immediately due and payable." The second paragraph contains a provision which, in substance, states that the insured agrees that if he shall be in default of the payment of any installment for a period of ten days after due date, such default shall be deemed to be an election by insured to cancel the policy and Prendergast Co. is authorized to notify the Insurance Company of such cancellation. The insured also agreed that the contract could be assigned to the Bank and it was assigned to said Bank by Prendergast Co. The assignment, among other provisions, authorizes the Bank to act as attorney in fact for Prendergast in notifying the Insurance Company of a default and demanding cancellation of the policy, and in the same paragraph Prendergast Co. agrees, in the event of default, to cancel said insurance policy and pay to the assignee any balances that may be due on the contract.

In construing all the instruments, we think the parties contemplated that the Bank, in case of default on the part of the insured, would report such fact to Prendergast Company, as indicated by the language, "Assignor (Prendergast Co.) does hereby agree, in the event of default, to cancel said insurance policy. * * *"

We point out that the policies themselves do not provide for forfeiture or cancellation for nonpayment of any money which might be due to the agent who actually issued the policies. The language in the assignment also empowers the Bank, in case of default, to act as attorney in fact for Prendergast Co. in notifying the Insurance Company of a default and demanding cancellation of the policy, and Prendergast Co. agrees, in the event of default, to cancel said policies. It being without dispute that Prendergast Co. took no action towards cancellation of the policies until the notices heretofore mentioned were mailed to insured, we hold that the letter of the Bank to Prendergast Co. was not an automatic cancellation of the policies and we therefore overrule points Nos. 1 and 2.

██ Points Nos. 4 through 7 concern the intention of the parties in regard to the cancellation of the policies. We think the evidence is sufficient to uphold the trial court's finding that it was not the intention of the Bank nor Prendergast Co. that the policies be cancelled by appellees' default and in finding that all parties recognized that the policies were in force. The Bank's letter to Prendergast Co. requested that "you cancel" the policies, said language being in the words of the assignment. The Bank did not send insureds or appellant Companies a copy of the letter. There is no showing that insureds had any information concerning any contemplated cancellation before they received the November 28 letter from Prendergast Co. Upon receipt of the letter, Prendergast Co. did not notify the Insurance Companies of any cancellation and did not make any entries in its books and did not at that time refund the amount necessary to liquidate the insurance premium contract held by the Bank. On the contrary, eight days after the Bank's letter to Prendergast Co., namely, November 28, 1950, Prendergast Co. wrote the insureds advising them that if the payment due was not received by December 2 "we shall be forced to register direct notice of cancellation on all of these policies" and "it is imperative that this matter be attended to immediately *in order to keep this insurance in force,* which we feel sure you will want to do." (Emphasis ours.) After the letter was written, one of Prendergast Co.'s representatives talked to Whiting in person concerning the payment, at which time Whiting offered to pay one-half then and the balance within thirty days and asked the agent to submit it to the Bank, to which the representative agreed. Neither the Bank nor Prendergast Co. ever asked for the policies or took any action on their records to cancel them and did not, prior to the fire, communicate with the appellant Companies concerning the policies. The quoted portions of the Prendergast Co. letter, together with the testimony concerning the personal conversation with Whiting, show conclusively that the Prendergast Co. and Whiting considered the policies still to be in force and effect. While there is little evidence showing what the Bank "intended" or "recognized", we think the trial court was justified in finding that the Bank did not intend for its letter to be a cancellation, and in finding that it, along with other parties concerned, did recognize, even after the letter was written, that the policies were in effect. The court could take into consideration the language of the policy, the Premium Finance Contract, and the assignment, and in addition could take into consideration the fact that the Bank was not the insurer and was not an owner or a mortgagee of the insured property. The trial court may draw any reasonable inference from the evidence and any doubts as to the facts raised by the evidence will be resolved in favor of the judgment. Mallam v. Trans-Texas Airways, Tex.Civ.App., 227 S.W.2d 344; City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038; 3–B Tex.Jur., p. 377. The Bank's interest was in seeing that the money advanced to Prendergast Co. was repaid, and it was not concerned whether said installment was paid by Prendergast Co. or the

insureds. The Bank had no more authority under the assignment than Prendergast Co. had under the contract. The Bank turned the matter back to Prendergast Co., who chose to keep the policies in force and endeavor to collect the installments. We uphold the trial court's findings that all parties intended for the policies to remain in force and that all parties continued to recognize the policies in force.

On December 8, Prendergast Co. sent formal notices to the insureds, four of which recited the policies would be cancelled five days after receipt unless the premiums were paid and the other three stating that they would be cancelled five days after receipt.

 While the presumption prevails that a letter duly mailed will be presumed to be duly delivered, such presumption is rebuttable. Anderson v. National Aid Life Ass'n, 140 Tex. 308, 167 S.W.2d 739. The witness, Mrs. Whiting, testified several times that the notices were received on Wednesday before the fire and gave reasons how she fixed the time in her mind. Since the notices were mailed on the 8th and the fire occurred on the 16th, then the Wednesday before the fire must have been the 13th. There was also some evidence of a strike which caused delay of mail delivery. We think the evidence is sufficient to uphold the trial court's finding that the policies were not received until December 13. The notices not having been delivered five days prior to the fire, the policies were in full force and effect at such time. Brewer v. Maryland Cas. Co., Tex.Civ.App., 245 S.W. 2d 532.

■ The last point complains of evidence admitted over the objection of the appellants, which they claim was inadmissible. The court stated at the beginning of the trial that he was not going to be strict on the rules of evidence because the matter was a question of law and so far as he was concerned, he would iron it out when he decided the case, and when objections were made to the particular evidence complained about, the court stated repeatedly that he would "cull it out." The case was tried on April 11, 1952, and judgment entered on May 20, 1952. It is apparent the judge took the case under advisement and in view of the statements made during the trial and the absence of any reference to said evidence in the court's findings, we are of the opinion that it is shown that he did not consider inadmissible or improper testimony. It is assumed that the evidence complained of, if inadmissible, was not considered by the trial judge. Williams v. State, Tex.Civ.App., 219 S.W.2d 509; El Paso City Lines, Inc. v. Smith, Tex.Civ.App., 226 S.W.2d 498; Evans v. Henry, Tex.Civ.App., 230 S.W.2d 620.

We overrule all points of error whether specifically discussed or not.

Finding no reversible error in the record, we affirm the judgment of the trial court.